# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA ATLANTA DIVISION

PHIGENIX, INC. and
MUSC FOUNDATION FOR
RESEARCH DEVELOPMENT

Plaintiffs,

     v.

GENENTECH, INC.,

Defendant.

Civil Action No. 14-cv-00287- RWS

## PHIGENIX, INC. AND MUSC FOUNDATION FOR RESEARCH DEVELOPMENT RESPONSE TO MOTION TO TRANSFER

Robert A. Gutkin (Pro Hac Vice)
Michael X. Ye, Ph.D. (Pro Hac Vice)
Aldo Noto(Pro Hac Vice)
John Murray, Ph.D. (Pro Hac Vice)
**ANDREWS KURTH LLP**
1350 I Street, NW
Suite 1100
Washington, DC 20005
Tel: 202.662.2700
Fax: 202.662.2739

Gregory L. Porter (Pro Hac Vice)
**ANDREWS KURTH LLP**
600 Travis
Suite 4200
Houston, TX 77002
Tel: 713.220.4200
Fax: 713.220.4285

Attorneys for Plaintiff  PHIGENIX, Inc.

And

Paul E. Weathington
Georgia Bar No. 743120
David C. Hanson
Georgia Bar No. 940508
**WEATHINGTON SMITH, P.C.**
191 Peachtree St. NE, Suite 3900
Atlanta, GA 30303
Tel: 404.524.1600
Fax: 404.524.1610

Attorneys for Plaintiff  PHIGENIX, Inc. and MUSC Foundation for Research
Development

## TABLE OF CONTENTS

Page

I.   INTRODUCTION ............................................................................................1

II.  ARGUMENT..................................................................................................2

    A.   Genentech Has a High Burden for Establishing the Propriety of Transferring a Case From a Plaintiff's Home District ..........................2

    B.   Genentech Misapplies the *Joao Bock* Case In Which the Plaintiff Did Not Even Reside in Georgia...........................................................3

    C.   Private and Public Interests Heavily Favor Keeping the Case Here....5

        1.   Phigenix's choice of its home district as the forum should be given considerable deference and weighs heavily against transferring the case. ...................................................................5

        2.   Relative means of the parties—Significant financial disparity between the parties weighs heavily against transferring the case....7

        3.   Witness convenience—Georgia is more convenient for identified key non-party witnesses, none of whom are unwilling, which weighs against transferring the case....................................8

            a.   Georgia is more convenient for KADCYLA®'s co-developer ImmunoGen, headquartered in Massachusetts. .........................8

            b.   Genentech's non-party witnesses in California are willing to participate...................................................................................9

            c.   The '534 patent inventor resides in Georgia............................10

            d.   There is no evidence that process is need to compel any witnesses to attend. ................................................................11

            e.   Genentech's longer list of party witnesses does not factor into proper venue transfer analysis. .........................................11

        4.   Party convenience—Merely shifting the burden of inconvenience from Genentech to Phigenix weighs against transferring the case. .................................................................13

        5.   Relevant document location and access to sources of proof—Today's electronic storage and transmission of documents has made this a non-factor...................................................................13

        6.   The locus of operative facts weighs in favor of keeping the case here. .......................................................................................16

        7.   Strong local interest and more efficient venue weigh in favor of this case remaining in Georgia.....................................................16

i

8. The two forums are equally familiar with patent law. ...................18

III. CONCLUSION .............................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Acrotube, Inc. v. J.K. Fin. Grp., Inc.*,
   653 F. Supp. 470 (N.D. Ga. 1987) ....................................................................3

*Bell v. K-Mart Corp.*,
   848 F. Supp. 996 (N.D. Ga. 1994) ..................................................................3

*Carroll v. Tex. Instruments*,
   No. 2:11-cv-1037-MHT, 2012 WL 1533785 (M.D. Ala. May 1, 2012) ...............14

*CBT Flint Partners, LLC v. Return Path, Inc.*,
   654 F.3d 1353 (Fed. Cir. 2011)........................................................................10

*Children's Network, LLC v. Pixfusion LLC*,
   722 F. Supp. 2d 404 (S.D.N.Y. 2010)...............................................................16

*Collegiate Licensing Col. v. Am. Cas. Co. of Reading, Pa.*,
   842 F. Supp. 2d 1360 (N.D. Ga. 2012) ............................................................18

*Consolidated Dev. Corp. v. Sherritt, Inc.*,
   216 F.3d 1286 (11th Cir.) .................................................................................18

*ESPN, Inc. v. Quiksilver, Inc.*,
   581 F. Supp. 2d 542 (S.D.N.Y. 2008) .............................................................14

*Gebr. Brasseler GmbH & Co. KH. v. Abrasive Tech., Inc.*,
   No. 1:08-cv-1246, 2009 WL 874513 (E.D. Va. Mar. 27, 2009).........................6

*Genentech, Inc. v. MedImmune, Inc.*,
   Case No. 2:06-cv-20 (E.D. Tex. 2006) ..............................................................4

*Gulf Oil Corp. v. Gilbert*,
   330 U.S. 501 (1947)........................................................................................2, 3

*In re Genentech*,
   566 F.3d 1338 (Fed. Cir. 2009)........................................................................13

*In re Ricoh Corp.*,
   870 F.2d 570 (11th Cir. 1989) ...........................................................................2

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) ...........................................................................14

*Joao Bock Transaction Sys., LLC v. Scottrade, Inc.*,
   No. 1-12-cv-02858-RWS, slip op. (July 1, 2013)........................................2, 3, 4

*Merial Ltd. v. Intervet, Inc.*,
No. 3:08-CV-121 (CDL), 2010 WL 942294 (M.D. Ga. Mar. 11, 2010) .............................11

*Microspherix LLC v. Biocompatibles, Inc.*,
No. 9:11-cv-80813, 2012 WL 243764 (S.D. Fla. Jan 25, 2012).............................................14

*Motorola Mobility, Inc. v. Microsoft Corp.*,
804 F. Supp. 2d 1271 (S.D. Fla. 2011) ................................................................................10

*Piper Aircraft Co. v. Reyno*,
454 U.S. 235 (1981) ...............................................................................................................5

*Polyform A.G.P. Inc. v. Airlite Plastics Co.*,
4:10-cv-43-CDL, 2010 WL 4068603 (M.D. Ga. Oct. 15, 2010)...........................................14

*Robinson v. Giarmarco & Bill, P.C.*,
74 F.3d 253 (11th Cir. 1996) .................................................................................................5

*Trinity Christian Ctr. of Santa Ana, Inc., v. New Frontier Media, Inc.*,
761 F. Supp. 2d 1322 (M.D. Fla. 2010) ................................................................................12

*Va. Innovation Sci., Inc., v. Samsung Elec. Co.*,
No. 2:12-cv-548, 2013 WL 831710 (E.D. Va. 2013) .............................................................6

*Verdegaal Bros. v. Union Oil Co. of California*,
814 F.2d 628 (Fed. Cir. 1987)..............................................................................................10

*Voice Techs. Grp., Inc. v. VMC Sys., Inc.*,
164 F.3d 605 (Fed. Cir. 1999)..............................................................................................10

*Wi-LAN USA, Inc. v. Apple, Inc.*,
No. 12-cv-24318-KKM, 2013 WL 1343535 (S.D. Fla. Apr. 2, 2013) ..................................14

*Zurich Am. Ins. Co. v. Renasant Ins. Co.*,
No. 8:10-cv-1769EAJ, 2011 WL 722972 (M.D. Fla. Feb. 23, 2011)......................................13

**STATUTES**

28 U.S.C. §1404(a) ...................................................................................................................2

**OTHER AUTHORITIES**

*15 Wright, Miller & Cooper §3851 at 424-25* ...........................................................................12

## I.    INTRODUCTION

Genentech, Inc. ("Genentech") seeks to transfer this case to the Northern District of California even though Plaintiff Phigenix, Inc. ("Phigenix") is not subject to personal jurisdiction there. Genentech is a member of the Roche Group, with annual revenues of more than $39 billion. Genentech regularly litigates all types of cases nationwide, including having litigated recent cases in this District. The matter before this Court will involve witnesses and evidence from Georgia, South Carolina, Massachusetts, California and possibly Switzerland. Yet, Genentech argues that the matter should be transferred to Northern California simply for the convenience of itself and its lead attorneys. Genentech has not and cannot make the  required "strong case" for transfer to override Phigenix's choice of filing the present matter in its home forum.

Dr. Carlton D. Donald is the founder, President and CEO of Phigenix, and the inventor of the intellectual property around which the company's technology is based. Dr. Donald has over 20 years of experience as a cancer biologist. Since he founded the company in 2007, Phigenix has always been based in Atlanta, Georgia. Dr. Donald and his family have lived, worked and attended school in Georgia since 2007. Declaration of Dr. Carlton D. Donald ("Donald Decl.") ¶ 9. As discussed in more detail below, Genentech not only ignores the Plaintiff's strong ties to this District, and that other witnesses are located far closer to Georgia

1

than California (including the other Plaintiff MUSC who resides in South Carolina, and Genentech's co-developer and licensor of KADCYLA®, ImmunoGen, Inc., who is based in Massachusetts), but relies on its own misapplication of the law in its main case *Joao Bock Transaction Sys., LLC v. Scottrade, Inc.*, No. 1-12-cv-02858-RWS, slip op. at 2 (July 1, 2013).

Transferring the case from this District to the Northern District of California would severely inconvenience Phigenix and deprive it of its chosen forum. Therefore, Genentech's request for transfer should be denied.

## II.   ARGUMENT

### A.   Genentech Has a High Burden for Establishing the Propriety of Transferring a Case From a Plaintiff's Home District

Genentech bears the burden of establishing the propriety of a transfer under 28 U.S.C. §1404(a).  *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989).  Most courts have used the "private-interest" and "public-interest" factors set out in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947), a forum non conveniens case, when deciding motions to transfer under §1404(a).  The following factors are relevant to the decision:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a

2

plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of circumstances. *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).

Under *Gulf Oil*, and the well-established cases that follow, "**the plaintiff's choice of forum [will not] be disturbed" unless it is clearly outweighed by other considerations**. *Gulf Oil Corp.*, 330 U.S. at 508 (emphasis added); *see also Acrotube, Inc. v. J.K. Fin. Grp., Inc.*, 653 F. Supp. 470, 477 (N.D. Ga. 1987) ("absent clear justification, courts in this district have consistently refused to override a plaintiff's choice of forum, especially where, as here, the plaintiff has brought suit in its home district."). Clearly, "[t]he movant has the burden of making a strong case for transfer, and if the transfer would merely shift inconvenience from one party to the other, or if the balance of all factors is but slightly in favor of the movant, plaintiff's choice of forum should not be disturbed and transfer should be denied." *Bell v. K-Mart Corp.*, 848 F. Supp. 996, 998 (N.D. Ga. 1994) (*quoting Grey v. Cont'l Mktg. Assocs., Inc.*, 315 F. Supp. 826, 831 (N.D. Ga. 1970)).

### B. Genentech Misapplies the *Joao Bock* Case In Which the Plaintiff Did Not Even Reside in Georgia

Genentech's principal argument for transfer is fundamentally flawed. Genentech says at page 1 of its brief that this Court has recognized that "proper venue in patent infringement suits is the defendant's place of business" and cites to

3

*Joao Bock Transaction Sys., LLC v. Scottrade, Inc.*, No. 1-12-cv-02858-RWS, slip

op. at 2 (July 1, 2013).[1] However, the *Joao Bock* case was based on very different

facts from the instant case, and therefore is inapposite here.

In *Joao Bock* the plaintiff lacked ***any*** connection to Georgia other than filing

three lawsuits here.   For example, the plaintiff was a limited liability company

organized under the laws of the State of Delaware and maintained a principal place

of business in Yonkers, New York.   The Court found that the plaintiff's choice of

forum was "entitled to little weight given Plaintiff's lack of connections to this

district." *Id.*

Here, Phigenix is a Georgia company with its principal place of business at

191 Peachtree Street, NE, Suite 3200, Atlanta, Georgia  30303, founded in 2007

having substantial connections to this district. Donald Decl. ¶ 4,5. Moreover,

Phigenix's licensor, MUSC Foundation for Research Development located in

South Carolina, is in much closer proximity to Georgia than it is to California.

Therefore, Phigenix's choice of forum is entitled to considerable deference given

its connections to its home district.

---

[1]  Genentech's argument is contrary to its conduct given that it has in the past seen
fit to file lawsuits against companies outside the defendant's district.   See, for
example, *Genentech, Inc. v. MedImmune, Inc.*, Case No. 2:06-cv-20 (E.D. Tex.
2006) wherein Genentech sued in the Eastern District of Texas even though neither
it nor the defendant resided there.

4

### C.   Private and Public Interests Heavily Favor Keeping the Case Here

Both private and public interests heavily favor keeping the case in Georgia. Genentech has failed to carry its burden of making a case that even slightly favors transfer to California. As described below, transferring this case would deprive Phigenix of its home forum and further increase the burden on the most relevant third parties. Moreover, a transfer would merely shift inconvenience from Genentech to Phigenix for no supportable reason other than Genentech's personal preference to litigate in Northern California, even though Genentech seems perfectly willing and capable in other matters of litigating throughout the U.S.[2] The transfer factors are analyzed in detail below.

**1.   Phigenix's choice of its home district as the forum should be given considerable deference and weighs heavily against transferring the case.**

The Eleventh Circuit has held that "the plaintiff's choice of forum should not be disturbed unless [the movant can show that] it is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996). Further, "a plaintiff's choice of forum is entitled to greater deference when the plaintiff has chosen the home forum." *Piper Aircraft Co. v. Reyno*, 454

---

[2] A search on PACER reveals that during the past 31 years, Genentech has litigated 465 cases in districts all over the United States. Genentech has previously litigated cases in this Circuit as recently as 2012. Declaration of Gregory L. Porter, ("Porter Decl.") ¶ 9.

U.S. 235, 255-56 (1981). Phigenix's home forum is the Northern District of Georgia. Donald Decl. ¶ 5.

A plaintiff that sues in its home forum, while not itself controlling, may further increase the weight of this factor depending on the nexus tying the case to the forum. *Gebr. Brasseler GmbH & Co. KH. v. Abrasive Tech., Inc.*, No. 1:08-cv-1246 (GBL/TCB), 2009 WL 874513, at *2 (E.D. Va. Mar. 27, 2009). Phigenix has an established ongoing nexus with this forum since at least as early as 2007 when the company was founded. Moreover, Phigenix conducts its daily operations, as well as ongoing research and development of its patented technologies in Georgia. Donald Decl. ¶ 5. *See Va. Innovation Sci., Inc., v. Samsung Elec. Co.*, No. 2:12-cv-548, 2013 WL 831710, at *4 (E.D. Va. 2013) (plaintiff's chosen forum was accorded greater weight due to "ongoing research and development of technologies for patent"). Dr. Donald and his family have lived, worked, and attended school in the Atlanta area since 2007, and belong to a number of Atlanta based organizations. Donald Decl. ¶ 9. Accordingly, Phigenix's choice of its home district as the forum is entitled to considerable deference and weighs heavily against transferring the case.

**2.    Relative means of the parties—Significant financial disparity between the parties weighs heavily against transferring the case.**

Remarkably, Genentech contends that this factor is neutral even though there is an obvious and significant financial disparity between the parties.  Genentech avoids directly addressing the relative financial means of the parties and instead gives a cursory review of Phigenix's patent portfolio and unrelated administrative proceedings at the Patent and Trademark Office, which have no bearing on this factor. Phigenix is the only party to properly analyze this factor accompanied by available evidence. As indicated below, there is a tremendous financial and size disparity between the parties.

Roche Group, which wholly owns Genentech, was ranked 3rd in 2013 global sales among pharmaceutical companies, behind only Pfizer and Novartis.  Roche's 2013 annual revenues were over $39 billion. Porter Decl. ¶ 2, Exh. A. Genentech itself says it employs at least 14,000 scientists, executives, and staff. ECF 38-3 at 2.  Genentech has demonstrated the means to litigate cases in districts all over the United States.  Porter Decl. ¶ 9.  In comparison, Dr. Donald, founder, President, and CEO of Phigenix, lives and works in Georgia, as do the other Phigenix employees. Donald Decl. ¶ 5, 7.

A transfer to the Northern District of California would severely prejudice Phigenix.

### 3. Witness convenience—Georgia is more convenient for identified key non-party witnesses, none of whom are unwilling, which weighs against transferring the case.

a. Georgia is more convenient for KADCYLA®'s co-developer ImmunoGen, headquartered in Massachusetts.

Genentech identifies ImmunoGen, Inc.,[3] headquartered in Massachusetts, as a potential non-party witness.  Genentech licenses technology for KADCYLA® from ImmunoGen, ECF 38-3 at 8, and both Genentech and ImmunoGen claim that KADCYLA® was jointly developed by both companies. Porter Decl. ¶ 4, Exh. C. Discovery in this matter will involve ImmunoGen documents and witnesses. Genentech contends that "[t]heir representatives will need to travel out of their home states regardless of where the case unfolds" without ever specifically identifying who these representatives might be or how many. ECF 38-1 at 14. From ImmunoGen's headquarters in Massachusetts, its employees would be more inconvenienced traveling to a trial in California as opposed to Georgia. Genentech's request for transfer from Georgia to California *significantly increases* required travel for non-party ImmunoGen representatives by almost 2000 miles and 5 hours flight time, clearly further inconveniencing these non-party witnesses. And if there was evidence that representatives of Genentech's key non-party witness ImmunoGen were unwilling to testify, which there is none, their

---

[3] For some reason Genentech includes non-party ImmunoGen under its discussion of "convenience of the parties" factor on page 9 of its Brief.

attendance could no more be compelled in California than in Georgia. It appears that ImmunoGen representatives could only be compelled in Massachusetts.

> b. Genentech's non-party witnesses in California are willing to participate.

Genentech identifies five potential non-party witnesses located in or around South San Francisco. ECF 38-1 at 17. Barbara Klencke and Robert Cohen are former Genentech employees said to have helped research and develop KADCYLA®. There is no evidence that process is needed to compel Ms. Klencke's or Mr. Cohen's attendance. Key non-party witnesses may also be healthcare professionals, distributors, wholesalers, and customers. Genentech has not produced any evidence concerning the location of these potential non-party witnesses. Although, Genentech lists a nationwide network of distributors on its website. Porter Decl. ¶ 8, Exh. G.

Genentech also identifies Timothy Schwartz as a former employee who corresponded with Phigenix in the pre-filing communications and is said to have relevant knowledge of Genentech's lack of specific intent to induce infringement. ECF 38-1 at 17. However, Genentech again provides no evidence that Mr. Schwartz would be unwilling to testify in Georgia, and in fact, he has indicated that he is willing to participate by signing a sworn declaration in support of Genentech's co-pending motion. ECF 37-3. Presumably, Mr. Schwartz is also willing to participate at trial.

Daniel V. Santi and Hillel David Friedland are said by Genentech to be authors of prior art that concern the validity of the '534 patent. ECF 38-1 at 17. However, the relevance any testimony they may give is limited because any invalidating disclosure will come from the prior art itself. *Verdegaal Bros. v. Union Oil Co. of California*, 814 F.2d 628, 631 (Fed. Cir. 1987) ("A claim is anticipated only if each and every element as set forth in the claim is found, either expressly or inherently described, in a single prior art reference.").  To the extent their testimony provides background information to the case, the inventor's testimony may also "provide background information, including explanation of the problems that existed at the time the invention was made and the inventor's solution to [those] problems." *Voice Techs. Grp., Inc. v. VMC Sys., Inc.*, 164 F.3d 605, 615 (Fed. Cir. 1999).  Further, inventor testimony is potentially relevant to issues of invalidity.  *See generally CBT Flint Partners, LLC v. Return Path, Inc.*, 654 F.3d 1353, 1360 (Fed. Cir. 2011).

> c.     The '534 patent inventor resides in Georgia.

Phigenix's key witness is Dr. Donald, the inventor of the '534 patent. Dr. Donald lives, works and attended school in this District. Donald Decl. ¶ 9. Courts have considered the home district of patent-in-suit's inventors when evaluating the convenience-of-the-witnesses factor.  *See e.g., Motorola Mobility, Inc. v. Microsoft Corp.*, 804 F. Supp. 2d 1271, 1277 (S.D. Fla. 2011) (convenience-of-witnesses

factor in patent infringement case weighed in favor of transfer to the Western District of Washington in part because four of the inventors of the patent resided in Washington); *Merial Ltd. v. Intervet, Inc.*, No. 3:08-CV-121 (CDL), 2010 WL 942294, at *3 (M.D. Ga. Mar. 11, 2010) (convenience-of-witnesses factor weighed slightly in favor of transfer to District Court for the District of Connecticut partially based on the fact that the inventors of the patent were located in or near Connecticut.).  Dr. Donald's home district weighs against transferring the case.

        d.     There is no evidence that process is need to compel any witnesses to attend.

Genentech's general allegation that "[t]he availability of process to compel their attendance could be significant" is inconsequential without evidence that these witnesses have actually indicated an unwillingness to participate, which they have not, and that process to compel their attendance will be needed. ECF 38-1 at 17. Genentech has not identified any witnesses who are actually unwilling to travel to Georgia to testify.

        e.     Genentech's longer list of party witnesses does not factor into proper venue transfer analysis.

Finally, Genentech argues that "at least sixteen potential trial witnesses" are located in South San Francisco. ECF 38-1 at 12. However, all sixteen are Genentech employees, that is, party witnesses that Genentech can control and produce at trial.  The weight accorded to these party-witnesses is limited.  *See*

11

*Trinity Christian Ctr. of Santa Ana, Inc., v. New Frontier Media, Inc.*, 761 F. Supp. 2d 1322, 1327 (M.D. Fla. 2010) ("[This factor's] significance is diminished when the witnesses, although in another district, are employees of a party and their presence at trial can be obtained by that party.").

It is also questionable that all sixteen are key witnesses given Genentech's spiritless position on whether these potential witnesses will even be necessary. For example, Genentech contends that "[a]t least five Genentech employees **could** testify in this action regarding the development of Kadcyla," and again that "at least eleven Genentech employees **could** testify in this action about sales, marketing, distribution, and/or regulatory planning for Kadcyla." ECF 38-1 at 12-13. (emphasis added). Focusing on key witnesses avoids the "battle of the numbers" problem—that is, when the parties argue the merits of a transfer based solely on who has the longer list of possible witnesses. *See 15 Wright, Miller & Cooper §3851 at 424-25* (noting that courts have uniformly "refused to let applications for transfer become a 'battle of numbers.'"). Genentech's argument that "inconvenience to the greater number of Genentech witnesses in the Northern District of California outweighs any inconvenience to the single foreseeable witness in the Northern District of Georgia (i.e., the inventor of the '534 patent)" clearly relies on its longer list of possible witnesses, which is uniformly rejected by courts. ECF 38-1 at 14.

Properly analyzing this factor weighs against transferring the case.

### 4. Party convenience—Merely shifting the burden of inconvenience from Genentech to Phigenix weighs against transferring the case.

It may be more convenient for Genentech and its lead attorneys to litigate this dispute in California. However, Phigenix has established that Georgia is its home forum and that key witnesses are located here; and thus, it would be inconvenient for Plaintiff Phigenix to litigate in California. "Where a transfer merely shifts the burden of inconvenience from one party and its witnesses to another party and its witnesses, courts will not disturb a plaintiff's choice of forum." *Zurich Am. Ins. Co. v. Renasant Ins. Co.*, No. 8:10-cv-1769EAJ, 2011 WL 722972, at *7 (M.D. Fla. Feb. 23, 2011). Accordingly, this factor does not favor transfer.

### 5. Relevant document location and access to sources of proof—Today's electronic storage and transmission of documents has made this a non-factor.

Genentech contends that because its relevant evidence is in South San Francisco, this factor weighs heavily in favor of transfer. Genentech cites *In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009), holding that "the place where the defendant's documents are kept weighs in favor of transfer to that location." But in that case, the Federal Circuit applied Fifth Circuit case law. And while the Fifth Circuit has held that the transfer of information electronically does not render

this factor neutral, *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 316 (5th Cir. 2008), the Eleventh Circuit has not weighed in on the significance of the location of documents in the electronic era.

District courts in this Circuit, however, have found that the location of physical documents does ***not*** play a substantial role in the venue analysis due to the electronic storage and transmission of information. *See, e.g., Wi-LAN USA, Inc. v. Apple, Inc.*, No. 12-cv-24318-KKM, 2013 WL 1343535, at *3 (S.D. Fla. Apr. 2, 2013); *Carroll v. Tex. Instruments*, No. 2:11-cv-1037-MHT, 2012 WL 1533785, at *7 (M.D. Ala. May 1, 2012); *Microspherix LLC v. Biocompatibles, Inc.*, No. 9:11-cv-80813, 2012 WL 243764, at *3 (S.D. Fla. Jan 25, 2012); *Polyform A.G.P. Inc. v. Airlite Plastics Co.*, 4:10-cv-43-CDL, 2010 WL 4068603, at *4 (M.D. Ga. Oct. 15, 2010). As the court in *Microspherix* recently explained,

> In a world with fax machines, copy machines, email, overnight shipping, and mobile phones that can scan and send documents, the physical location of documents is irrelevant. In light of the burden a party moving for transfer bears, absent a showing by the moving party to the contrary, this Court considers the location of relevant documents and the relative ease of access to sources of proof a non-factor.

*See also ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542, 548 (S.D.N.Y. 2008) ("In an era of electronic documents, easy copying and overnight shipping, this factor assumes much less importance than it did formerly."). Therefore, while

14

the location of documents may weigh in favor of transfer, the weight of this factor is minimal considering the electronic exchange of information.

Moreover, Genentech by its own admission is well versed and equipped for substantial electronic document exchange as evidenced by mandatory submissions to the United States Food and Drug Administration of all their drugs, including KADCYLA® development records, marketing materials, and sales planning documents. ECF 38-1 at 15. Electronic Regulatory Submission and Review has become the standard, accepted method of document submission for a number of submissions to the FDA, Porter Decl. ¶ 5, Exh. D, which would likely include submissions for KADCYLA®.

Still further, Phigenix has reason to believe that Roche Group, based in Switzerland, may be involved in the development, production and distribution of KADCYLA®. Porter Decl. ¶ 3, Exh. B. At this point in time, Plaintiffs need discovery and additional information to evaluate whether it will be necessary to obtain testimony and relevant documents concerning this matter from Roche, or if that information is available through Genentech.

This factor should be considered neutral or given minimal weight in today's era of electronic document exchange, particularly given the documents relating to KADCYLA® previously submitted by Genentech with the FDA.

### 6.   The locus of operative facts weighs in favor of keeping the case here.

"In patent cases, the locus of operative facts usually lies where either the patent-in-suit or the allegedly infringing product was designed, developed, and produced. *Children's Network, LLC v. Pixfusion LLC*, 722 F. Supp. 2d 404, 413 (S.D.N.Y. 2010).

The invention underlying the patent-in-suit was conceived and reduced to practice in South Carolina and Georgia (Donald Decl. ¶ 3.), whereas the allegedly infringing product was purportedly partly designed and developed in Massachusetts by the licensor ImmunoGen and partly in California. Currently, there is no evidence of where or by whom the allegedly infringing product is currently manufactured. And it appears that the manufacturing will soon be conducted in Switzerland by Genentech's parent company Roche. Porter Decl. ¶ 3, Exh. B. Genentech's infringing activities have occurred throughout the United States, including Georgia. Therefore, this factor should be considered neutral or slightly weighing in favor of keeping the case here.

### 7.   Strong local interest and more efficient venue weigh in favor of this case remaining in Georgia.

Interests of justice weigh against transferring this case from Georgia, or at least render it neutral. Phigenix, the exclusive licensee of the '534 patent is located in Georgia, where it conducts daily operations, as well as ongoing research and

development of its patented technologies.  Donald Decl. ¶ 5.  Phigenix regularly contracts with others for services who are based in Georgia as part of its day to day operations.  Donald Decl. ¶ 8. MUSC acts as the contact for industry and entrepreneurs wishing to commercialize intellectual property from the Medical University of South Carolina. Porter Decl. ¶ 7, Exh. F. Additionally, Genentech has done business in Georgia for years, and continues to do business in Georgia, has registered with the Georgia Secretary of State as a foreign corporation, and has appointed an agent for service of process in Georgia.  Porter Decl. ¶ 10.

Phigenix has no contacts with the forum to which Genentech seeks to have the case transferred, the Northern District of California:

(1) Phigenix is not incorporated or licensed to do business in California;

(2) Phigenix has never filed any tax returns with California;

(3) Phigenix does not conduct any daily business with California companies, or generate any business in California;

(4) Phigenix does not maintain offices in California;

(5) Phigenix has not otherwise availed itself of California resources in an extensive manner as a way of furthering its business;

(6) Phigenix does not own land or property within California;

(7) Phigenix has not made any sales in California or specifically targeted advertising to reach the California market; and

17

(8) Phigenix does not maintain an agent or distributor in California.  Donald Decl. ¶ 6; *and see Consolidated Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286 (11th Cir.).

Therefore, there is a strong local interest in resolving this dispute in Phigenix's home forum of Georgia.

Likewise, trial efficiency weighs against transferring the case.  First, there is no other related ongoing litigation between the parties in the Northern District of California that would cause a court to consider the need for consolidating actions to avoid duplicative or cumulative decisions.  Moreover, in evaluating this factor courts often consider whether the case may be resolved more expeditiously in the alternative forum.  *See Collegiate Licensing Col. v. Am. Cas. Co. of Reading, Pa.*, 842 F. Supp. 2d 1360, 1368-69 (N.D. Ga. 2012).  Here, the Northern District of Georgia is faster to trial than Genentech's requested transferee forum by almost four months. Porter Decl. ¶ 6, Exh. E. Therefore, judicial economy is best served by keeping the case in Georgia where it will be resolved more expeditiously.

### 8.    The two forums are equally familiar with patent law.

Both the Northern District of Georgia and the Northern District of California are equally well-versed in patent law, and this factor is neutral.

III.   **CONCLUSION**

For all the reasons sets forth above, and in the supporting papers filed concurrently with this Response, Plaintiffs respectfully request that the Court deny Defendant's Motion to Transfer.

Dated:  August 4, 2014

<div style="margin-left:40%">

By:   /s/ David C. Hanson
Paul E. Weathington
Georgia Bar No. 743120
David C. Hanson
Georgia Bar No. 940508
**WEATHINGTON SMITH, P.C.**
191 Peachtree St. NE, Suite 3900
Atlanta, GA 30303
Tel: 404.524.1600
Fax: 404.524.1610
PWeathington@weathingtonsmith.com
DHanson@weathingtonsmith.com

Attorneys for Plaintiffs  PHIGENIX, Inc.
and MUSC Foundation for Research
Development

And

</div>

Robert A. Gutkin (Pro Hac Vice)
Michael X. Ye, Ph.D. (Pro Hac Vice)
Aldo Noto(Pro Hac Vice)
John Murray, Ph.D. (Pro Hac Vice)
**ANDREWS KURTH LLP**
1350 I Street, NW
Suite 1100
Washington, DC 20005
Tel: 202.662.2700
Fax: 202.662.2739
robertgutkin@andrewskurth.com
michaelye@andrewskurth.com
aldonoto@andrewskurth.com
johnmurray@andrewskurth.com

Gregory L. Porter (Pro Hac Vice)
**ANDREWS KURTH LLP**
600 Travis
Suite 4200
Houston, TX 77002
Tel: 713.220.4200
Fax: 713.220.4285
gregporter@andrewskurth.com

Attorneys for Plaintiff  PHIGENIX, Inc.

20

## CERTIFICATE OF COMPLIANCE

I HEREBY CERTIFY that the foregoing and the attached documents comply with LR 7.1(D) and LR 5.1, ND Ga. The font and point size used in preparing the foregoing document are Times New Roman, 14 pt.

**WEATHINGTON SMITH, P.C.**

By:  */s/* David C. Hanson
     David C. Hanson

     Attorneys for Plaintiff PHIGENIX, Inc. and MUSC Foundation for Research Development

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of August 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of this filing to all attorneys of record who are filing users of the Court's Electronic Filing System.

/s/ David C. Hanson

21