# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA ATLANTA DIVISION

| | |
|---|---|
| PHIGENIX, INC. and MUSC FOUNDATION FOR RESEARCH DEVELOPMENT<br><br>    Plaintiffs,<br><br>        v.<br><br>GENENTECH, INC.,<br><br>    Defendant. | Civil Action No. 14-cv-00287- RWS |

## PHIGENIX, INC. AND MUSC FOUNDATION FOR RESEARCH DEVELOPMENT RESPONSE TO MOTION TO DISMISS

Robert A. Gutkin (Pro Hac Vice)
Michael X. Ye, Ph.D. (Pro Hac Vice)
Aldo Noto (Pro Hac Vice)
John Murray, Ph.D. (Pro Hac Vice)
**ANDREWS KURTH LLP**
1350 I Street, NW
Suite 1100
Washington, DC 20005
Tel: 202.662.2700
Fax: 202.662.2739

Gregory L. Porter (Pro Hac Vice)
**ANDREWS KURTH LLP**
600 Travis
Suite 4200
Houston, TX 77002
Tel: 713.220.4200
Fax: 713.220.4285

Attorneys for Plaintiff  PHIGENIX, Inc.

And

Paul E. Weathington
Georgia Bar No. 743120
David C. Hanson
Georgia Bar No. 94050
**WEATHINGTON SMITH, P.C.**
191 Peachtree St. NE, Suite 3900
Atlanta, GA 30303
Tel: 404.524.1600
Fax: 404.524.1610

Attorneys for Plaintiff  PHIGENIX, Inc. and MUSC Foundation for Research
Development

# TABLE OF CONTENTS

I.    INTRODUCTION ...............................................................................1

II.   SUMMARY OF ARGUMENT ...................................................2

III.  ARGUMENT ....................................................................6

  A. The Legal Requirements for A Motion to Dismiss ....................................6

  B. Plaintiffs Adequately Plead Direct Infringement ........................................8

    1.   The Legal Requirements for Direct Infringement.................................8

    2.   Defendant Controls the Entire Process for the Manufacturing, Distribution, Administration and Reporting of Use of KADCYLA® for Certain Patients ..............................................................10

  C. Plaintiffs Adequately Plead Inducement of Infringement ..........................14

    1.   Plaintiffs Plead All Elements of Inducement .......................................15

    2.   Defendant Mischaracterizes The Pre-Filing Correspondence.............18

IV.   CONCLUSION.........................................................................24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Andrulis Pharms. Corp. v. Celgene Corp.*,
    No. 13-1644, 2014 U.S. Dist. LEXIS 50110 (D. De. Apr. 10, 2014) ...............14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)....................................................................................passim

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..........................................................................................7, 8

*BRK Brands, Inc. v. Nest Labs, Inc.*,
    No. 13-c-7900, 2014 WL 1225324 (N.D. Ill. March 18, 2014) ........................17

*Canon Inc. v. Color Imaging Inc.*,
    No. 11-cv-3855, 2013 U.S. Dist. LEXIS 34503 (N.D. Ga. Feb. 8,
    2013) ....................................................................................................................7

*Clouding IP, LLC, v. Rackspace Hosting, Inc.*,
    No. 12-675, 2014 WL 495752 (D. De. Feb. 6, 2014)........................................17

*Commil USA, LLC v. Cisco Sys., Inc.*,
    720 F.3d 1361 (Fed. Cir. 2013), *reh'g denied* (Oct. 25, 2013), *petition
    for cert. filed* (Jan. 23, 2014). ECF 37-1 at 13.....................................4, 5, 16, 17

*DSU Med. Corp. v. JMS Co.*,
    471 F.3d 1293 (Fed. Cir. 2006) ........................................................................15

*Foman v. Davis*,
    371 U.S. 178 (1962).............................................................................................24

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
    681 F.3d 1323 (Fed. Cir. 2012) ...................................................................passim

*In re Grasselli,*
    713 F.2d 731 (Fed.Cir.1983) .............................................................................18

*In re Robertson,*
    169 F.3d 743 (Fed. Cir. 1999) ............................................................................ 19

*Muniauction, Inc. v. Thomson Corp.,*
    532 F.3d 1318 (Fed. Cir. 2008) ................................................................. 10, 14

*Schumer v. Lab. Computer Sys., Inc.,*
    308 F.3d 1304 (Fed. Cir. 2002) ......................................................................... 19

*Sikes Cookers & Grill, Inc. v. Vidalia Outdoor Products, Inc.,*
    No. 08-cv-0750, 2009 WL 427227 (N.D. Ga Feb. 19, 2009) ....................... 5, 22

STATUTES

35 U.S.C. §282 ............................................................................................................ 2

OTHER AUTHORITIES

Fed. R. Civ. P. 8 ..................................................................................................... 6, 18

Fed. R. Civ. P. 8(a)(2) ............................................................................................. 1, 6

Fed. R. Civ. P. 12(b)(6) .............................................................................................. 5

Fed. R. Civ. P. 15(a)(2) ............................................................................................. 24

LPR 4, NDGa ............................................................................................................ 21

LPR 4.4, NDGa ......................................................................................................... 18

U.S. Patent No. 8,080,534 ................................................................................. passim

## I.   **INTRODUCTION**

Plaintiffs Phigenix, Inc. ("Phigenix") and MUSC Foundation for Research Development ("MUSC") (collectively "Plaintiffs") filed a First Amended Complaint ("Complaint") on June 16, 2014, seeking relief for Defendant Genentech, Inc.'s ("Genentech" or "Defendant") willful and deliberate infringement of U.S. Patent No. 8,080,534 (the '534 Patent), titled "Targeting PAX2 for the Treatment of Breast Cancer". Since the Complaint clearly satisfies the pleading requirements of a "short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), Defendant instead attempts through their Motion to Dismiss (the "Motion") to offer the Court in effect an unsupported motion for summary judgment based on misstatements of the law, speculation and mischaracterization of the facts. Defendant requests that the Court engage in a premature weighing of evidence, of which there is little provided by Defendant, to decide the merits of the case. Moreover, even ignoring that Defendant fails to support their arguments with admissible evidence, it is fundamental that ***a motion to dismiss is not the proper means to resolve factual disputes***. Defendant's Motion should be denied.

## II.    SUMMARY OF ARGUMENT

Defendant "directly and/or indirectly" infringes the '534 Patent, and as stated in the Complaint, the scope and nature of Defendant's infringement of the '534 Patent is substantial. *See* Complaint ¶¶ 12 -15. Defendant's Motion fails to focus on the infringement stated in the Complaint and Plaintiffs' burden at the pleading stage under the Federal Rules of Civil Procedure. Instead, Defendant raises factual disputes, and offers arguments premised on misstatements of  law and fact:

- Defendant attempts to challenge the allegations of direct infringement by arguing that it is merely a manufacturer of KADCYLA® and therefore cannot infringe the claims of the '534 Patent.  Yet, as set forth in publically available information on the very website identified in the Complaint, **Defendant operates certain programs that control all aspects of KADCYLA®** from manufacturing through administration to the patient and subsequent reporting of followed procedure, which directly infringes claims of the '534 Patent; and,

- Defendant attempts to challenge the allegations of indirect infringement by relying upon a reference, **a PCT publication that is not mentioned in the Complaint[1] and does not disclose KADCYLA® or the necessary elements and limitations of the claims of the '534 Patent.**  Defendant argues that the reference somehow inherently anticipates the '534 Patent claims, which thus

---

[1] For the Court to even consider a reference as a basis for invalidating a patent, which is of course presumed valid by law under 35 U.S.C. §282, would require at a minimum factual evidence, expert testimony, and claim construction. Defendant has not and cannot offer any such evidence to support a motion to dismiss.

renders the patent invalid.  Defendant further argues that based upon this purported inherent anticipation, Defendant cannot be liable for indirect infringement because of a "good faith belief" in its invalidity argument. Defendant's contrived and complicated argument is replete with disputed facts and lacking in legal and evidentiary support.  Moreover, the argument has no relevance to challenging the adequacy of a pleading by a motion to dismiss.

As set forth in the Complaint, Defendant directly infringes the '534 Patent through the manufacture, use, sale and/or marketing of KADCYLA®. As one example of the direct infringement, the Complaint references a Genentech public website detailing means by which KADCYLA® is distributed to certain patients. (*See e.g.* http://www.genentech-access.com/kadcyla/hcp/see-how-we-can-help/our-services/product-distribution). *Id*. A cursory review of this public website reveals that Defendant operates a "Genentech® Access to Care Foundation ("GATCF") which makes KADCYLA® available to certain patients.  *See* Declaration of John Murray filed in support of this Response (Murray Decl., ¶ 5, Exhibit D). Pursuant to this one example of direct infringement, Defendant is in complete control of all aspects of the treatment with KADCYLA®, from manufacturing, to whether or not the patient will receive KADCYLA®, through the administration of KADCYLA® to the patient, and the follow up reporting of the procedure to Defendant, all of which is subject to specific program guidelines and requirements set by Defendant. In fact, as discussed below and stated by Defendant on their website, the failure by

the administering physician to follow Defendant's specific guidelines, including reporting requirements to Defendant, will subject the physician to liability to Defendant. Accordingly, Defendant is not merely the manufacturer of KADCYLA®, but is in reality the "mastermind" of at least one known program that controls the treatment of patients by physicians, and thus directly infringes the claims of the '534 Patent.

Defendant also induces healthcare professionals to infringe the '534 Patent through the manufacture, use, sale and/or marketing of KADCYLA®, which includes specific instructions on the administration of the drug.  Complaint¶ 12 (a). Since Defendant cannot dispute its own prescribing and use information instructing how and when KADCYLA® is to be administered, Defendant instead attempts to argue that "a good faith belief of patent invalidity negates intent to induce infringement" while misstating the holding of a recent Federal Circuit decision, *Commil USA, LLC v. Cisco Sys., Inc.*, 720 F.3d 1361, 1367-68 (Fed. Cir. 2013), *reh'g denied* (Oct. 25, 2013), *petition for cert. filed* (Jan. 23, 2014) (No. 13-896). ECF 37-1 at 13.

In fact, in *Commil* the Federal Circuit stated that "[although] evidence of an accused inducer's good-faith belief of invalidity may negate the requisite intent for induced infringement. This is, of course, not to say that such evidence precludes a

4

finding of induced infringement. Rather, it is evidence that should be considered by the fact-finder in determining whether an accused party knew that the induced acts constitute patent infringement …[w]e certainly do not hold that if the inducer of infringement believes in good faith that the patent is invalid, there can be no liability for induced infringement." *Id*. at 1368-69 (internal citation omitted), and at 1368 n. 1 (internal citation omitted). Defendant's whole argument regarding induced infringement rests on a spurious statement of law, which "does little more than construct a straw man and set him ablaze." *Id*. At most, Defendant's assertion of a good faith belief of patent invalidity raises a "triable issue of fact as to intent to induce infringement." *Id*. at 1368 (citing *DataQuill Ltd. V. High Tech Computer Corp.*, 887 F.Supp.2d 999, 1012-13 (S.D. Cal. 2011)). Such issues of fact are properly addressed through the discovery process and either summary judgment or trial, they are not properly addressed by a Fed. R. Civ. P. 12(b)(6) motion to dismiss.

Defendant articulates no legally cognizable basis for dismissal. It is well-settled that when ruling on a defendant's motion to dismiss, a court "must take all of the factual allegations in the complaint as true." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Claim construction, moreover, is inappropriate at the pleading phase. *See Sikes Cookers & Grill, Inc. v. Vidalia Outdoor Products, Inc.*, No. 08-cv-0750,

2009 WL 427227, at *3 (N.D. Ga. Feb. 19, 2009) (denying a motion to dismiss or in the alternative motion for summary judgment at the pleadings phase because "[t]he court finds that it cannot construe these limitations at this time without the information L.P.R. 6 is designed to provide including the exchange of preliminary constructions, a joint claim construction statement, claim construction discovery, claim construction briefs, and a claim construction hearing."). Defendant ignores the facts stated in the Complaint, muddles the legal standard for its Motion, misapplies the controlling case law and prematurely asserts fact disputes and claim construction arguments. Defendant's arguments lack merit and clearly are not appropriate for consideration at the pleadings phase.

The Complaint far exceeds the requirements of Fed. R. Civ. P. 8 and Form 18 for pleading patent infringement. The Court, therefore, should deny Defendant's Motion.

## III.   ARGUMENT

### A.   <u>The Legal Requirements for A Motion to Dismiss</u>

Fed. R. Civ. P. 8(a)(2) requires only that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." At the pleading stage, a plaintiff need not marshal its evidence or prove its case. *See Iqbal*, 556 U.S. at 696.  Instead, to survive a motion to dismiss, a complaint need

only "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

On a motion to dismiss, the Court "a court must take the allegations as true, no matter how skeptical the court may be." *Id*. at 696 (discussing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), and all reasonable inferences must be drawn in favor of the non-moving party. *See In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1340 (Fed. Cir. 2012) ("Nothing in *Twombly* or its progeny allows a court to choose among competing inferences as long as there are sufficient facts alleged to render the non-movant's asserted inferences plausible."). Recently, this Court held that "the Federal Circuit in *In re Bill of Lading* citing to *Twombly* noted that plaintiffs do not have to set forth or prove specific facts that provide the basis for the plaintiff's cause of action to survive a motion to dismiss. Therefore, the court concludes that *In re Bill of Lading* did not establish a new 'fact pleading' standard for the evaluation of motions to dismiss." *Canon Inc. v. Color Imaging Inc.*, No. 11-cv-3855, 2013 U.S. Dist. LEXIS 34503, at *9 (N.D. Ga. Feb. 8, 2013). *Twombly* illustrated the governing pleading standard as follows: "a well-pleaded complaint may proceed

even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

Rather than address the Complaint in light of the pleading standards relevant to a motion to dismiss, Defendant's brief is based on speculation and legal and factual misstatements offered in support of arguments that at most create factual disputes. At a later stage in this matter, Defendant may attempt to suggest facts to support a defense against infringement of the '534 Patent.  However, both the Federal Rules of Civil Procedure and black letter case law do not support the weighing of facts in the course of a motion to dismiss.

### B.    Plaintiffs Adequately Plead Direct Infringement

#### 1.    The Legal Requirements for Direct Infringement

Defendant argues that the Complaint fails to state a facially plausible claim for direct infringement. ECF 37-1 at 9-12. Whether a complaint adequately pleads direct infringement is measured by the specificity required by Form 18 of the Appendix of Forms to the Federal Rules of Civil Procedure. Form 18 simply requires:

> (1) an allegation of jurisdiction; (2) a statement that the plaintiff owns the patent; (3) a statement that defendant has been infringing the patent 'by making, selling, and using [the device] embodying the patent'; ( 4) a statement that the plaintiff has given defendant notice of its infringement; and (5) a demand for an injunction and damages.

*In re Bill of Lading*, 681 F.3d at 1334 (internal citation omitted).

The Complaint satisfies this standard, since it includes: (1) an allegation of jurisdiction (Complaint ¶¶ 4-5); (2) a statement that Plaintiffs own the '534 Patent (Complaint ¶ 10); (3) a statement that Defendant infringes the patent by using methods claimed by the '534 Patent, including specifically that Defendant "manufactures, uses, sells and/or markets KADCYLA® throughout the United States . . . has infringed and is continuing to infringe the '534 patent, directly and/or indirectly, through conduct that includes at least actively inducing healthcare professionals to prescribe and administer KADCYLA® to treat patients with HER-2 positive, metastatic breast cancer who previously received trastuzumab and a taxane, separately or in combination . . . [and] by continuing to make, sell, induce and/or contribute to the infringement of the '534 patent." (Complaint ¶¶ 12-13); (4) statements providing Defendant notice of its infringement (Complaint ¶ 6); and, (5) a demand for an injunction and damages (Complaint ¶ 16-19).

The Federal Circuit has held that an asserted claim of direct infringement that follows the dictates of Form 18, clearly passes muster under the Rules and cannot be successfully attacked in a motion to dismiss. *In re Bill of Lading*, 681

F.3d at 1334. In fact, Defendant does not contend that the Complaint fails to satisfy Form 18. Defendant already concedes infringement for purposes of the Motion. *See* 37-1 at 15 n. 6. Instead, Defendant focuses the entirety of its argument on trying to argue the merits of the case, and not whether Plaintiffs have satisfied the pleading requirements. Defendant argues that it cannot be a direct infringer as a manufacturer. Defendant attempts to argue facts, rather than challenge notice or demonstrate any lack of understanding of the allegations.

**2.** **Defendant Controls the Entire Process for the Manufacturing, Distribution, Administration and Reporting of Use of KADCYLA® for Certain Patients**

A claim is directly infringed if one party exercises control or direction over the entire process such that every step is attributable to the controlling party, i.e., the mastermind. *See Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1329 (Fed. Cir. 2008), also relied upon by Defendant at p. 10 of its memorandum supporting the Motion. Determining the extent to which control has been exercised is obviously a factual issue that goes well beyond the plausibility of an allegation for purposes of a motion to dismiss. However, since Defendant makes the affirmative misstatement that its sole involvement regarding KADCYLA® is as a manufacturer, the following facts are offered to both set the record straight and

confirm the plausibility of Plaintiffs' claim for direct infringement against Defendant.

Defendant displays on its public website a list of authorized distributors (http://www.genentech-access.com/kadcyla/hcp/see-how-we-can-help/our-services/product-distribution). Complaint ¶ 12(b); Murray Decl. ¶ 2, Exhibit A. Cursory inspection of this website reveals that Defendant offers further access to a "Compass for Patient Access" that will help "Find the right assistance program for your patients."[2] Murray Decl. ¶ 2, Exhibit A. This embedded link leads to a portal entitled "Connect to Compass for Patient Access." Murray Decl. ¶ 3, Exhibit B. If a user inputs that a patient is uninsured, then the portal directs the user to the website for "Genentech® Access to Care Foundation (GATCF)." Murray Decl. ¶ 4, Exhibit C. If the user follows the instruction to "Click here to learn more about GATCF" the portal links to "Help for Uninsured Patients." Murray Decl. ¶ 5, Exhibit D.

The "Help for Uninsured Patients" webpage instructs the user that "[t]o apply to GATCF, you must complete and submit the Statement of Medical Necessity (SMN) form and have your patient complete and submit a Patient

---

[2] Defendant charges approximately $94,000.00 for a ten month supply of KADCYLA®. Murray Decl. ¶ 11, Exhibit J.

Authorization and Notice of Release of Information (PAN) form." Murray Decl. ¶ 5, Exhibit D. The webpage points the user to "our Forms and Documents." Murray Decl. ¶ 6, Exhibit E. The forms are used by Defendant to determine whether or not it will provide KADCYLA® to the patient under one of the available programs offered by Defendant. Murray Decl. ¶¶ 7-8, Exhibits F, G. If Defendant determines the patient qualifies under the rules and regulations it has established for the programs, then Defendant delivers KADCYLA® to the patient at the specified location. Murray Decl. ¶ 7, Exhibit F. KADCYLA® is then administered pursuant to the prescription instructions provided by Defendant, and the administering physician completes Defendant's  "Confirmation of Infusion or Injection" form, completion of which is required to participate in Defendant's program. Murray Decl. ¶ 9, Exhibit H. This "Confirmation of Infusion or Injection" form requires that physicians report both the date of service of patients with KADCYLA® and the amount of drug infused/injected, which of course is covered by Defendant's prescription instructions, as well as instructions for use. Murray Decl. ¶ 10, Exhibit I. The failure by the physician to certify the infusion or injection, subject to Defendant's rules and regulations, may result in liability of  the physician to Defendant (Murray Decl. ¶ 9, Exhibit H).

Pursuant to the above program offered and controlled by Defendant:

1) The patient and their physician apply to Defendant for consideration to participate in Defendant's program (Murray Decl. ¶ 5, Exhibit D);

2) Defendant decides whether or not to provide KADCYLA® to the patient (Murray Decl. ¶ 7, Exhibit F);

3) If Defendant decides to provide KADCYLA® both the patient and the physician must use and report the use KADCYLA® pursuant to the Defendant's program rules and requirements, as well as the prescription and use instructions (Murray Decl. ¶ 7, Exhibit F); and,

4) The failure by the physician to comply with the Defendant's rules and regulations will subject the physician to liability to Defendant (Murray Decl. ¶ 9, Exhibit H).

In this one example of direct infringement, Defendant is not merely a manufacturer of KADCYLA®, but also operates at least one easily identifiable program in which it is responsible for controlling the treatment of patients, even to the extent of requiring reporting of time and quantity of drug treatment by physicians. Accordingly, the Complaint not only satisfies the standard of Form 18, but also provides facts that allow the Court to draw the reasonable inference that

Defendant exercises control over treatment of patients with KADCYLA®, such that Defendant is the "mastermind" of the GATCF program. *Muniauction*, 532 F.3d at 1329.

In a very recent case in Delaware involving a set of similar facts for the distribution of Thalidomide by Celgene Corporation, Judge Andrews denied the motion to dismiss a joint direct infringement claim and held that there was "a plausible inference that Celgene 'directs or controls' doctors' performance of the claimed method." *Andrulis Pharms. Corp. v. Celgene Corp.*, No. 13-1644, 2014 U.S. Dist. LEXIS 50110, at *5 (D. De. Apr. 10, 2014).  The relationship between the prescribing doctors and Celgene in the course of obtaining Thalidomide; the high degree of control exercised by Celgene over the prescribing of Thalidomide; and, the instructions from Celgene to the physician regarding how Thalidomide should be used were all factors in the Court's decision.  *Id.* The allegations in the present case merit a similar result since there is clearly a "plausible inference" that Defendant's direction and control of at least the GATCF program is sufficient for joint direct infringement.

### C.    Plaintiffs Adequately Plead Inducement of Infringement

Defendant argues that the Complaint fails to state a claim for induced infringement. ECF 37-1 at 12-25. Defendant's argument is based completely upon

factual disputes that are not properly considered at the pleading stage. It is black letter law that for purposes of considering a motion to dismiss, the Court "a court must take the allegations as true, no matter how skeptical the court may be." *See supra* discussion at p. 6, *Iqbal*, 556 U.S. at 696. Defendant's attempt to raise factual disputes is inappropriate for purposes of a motion to dismiss, and demonstrates the fatal deficiencies with the Motion.

### 1.    Plaintiffs Plead All Elements of Inducement

To plead a claim for inducement, a plaintiff must allege: (1) a direct infringement of the patent; (2) the party accused of inducement knowingly engaged in acts that induced the infringement by the direct infringer; (3) the party accused of inducement knew of the patent at issue; and (4) the party accused of inducement acted with intent to cause a patent infringement. *See In re Bill of Lading*, 681 F.3d at 1339; *see also Global-Tech Appliances, Inc. v. SEE S.A.*, 131 S. Ct. 2060, 2068 (2011); *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006). The plaintiff need not prove these elements at the pleading phase; it need only plausibly allege them. *See In re Bill of Lading*, 681 F.3d at 1339.

The Complaint states facts supporting each element of active inducement. Plaintiffs state that: (1) health care providers directly infringe the '534 Patent (Complaint ¶¶ 12,13); (2) Defendant knowingly engaged in acts that induced the

infringement by the direct infringer (Complaint ¶ 13); Defendant knew of the '534 Patent (Complaint ¶ 6); and (4) Defendant acted with intent to infringe the '534 Patent, or was willfully blind as to whether it was causing patent infringement (Complaint ¶ 13).

Defendant does not contest that the Complaint fails to satisfy these elements, instead, it rests its argument on the assertion that "the complaint fails to allege facts - supporting a reasonable inference in plaintiffs' favor - that overcome Defendant's showing of its good faith belief in invalidity." ECF 37-1 at 13. Defendant's argument turns the law upside down.

There is no burden on a plaintiff in its pleading to overcome a factually dependent defense asserted by a defendant. For purposes of rebutting a motion to dismiss, all factual allegations in the pleading are to be read in favor of the non-moving party. *See Iqbal*, 556 U.S. at 696; *Bill of Lading*, 681 F.3d at 1340. Defendant wholly mischaracterizes the law, which instead actually states that the defense asserted by Defendant, an assertion of a good faith belief in invalidity, is itself a factual issue for investigation. *See Commil USA*, 720 F.3d at 1368-69 ("[Although] evidence of an accused inducer's good-faith belief of invalidity may negate the requisite intent for induced infringement. This is, of course, not to say that such evidence precludes a finding of induced infringement. Rather, it is

16

evidence that should be considered by the fact-finder in determining whether an accused party knew that the induced acts constitute patent infringement." (internal citation omitted)). To hold otherwise would permit a defendant to obtain the dismissal of a well plead infringement complaint, merely by maintaining that the defendant had a good faith belief in the invalidity of the patent at issue. *See also Clouding IP, LLC, v. Rackspace Hosting, Inc.*, No. 12-675, 2014 WL 495752, at *3 (D. De. Feb. 6, 2014) ("*Commil* arose in a far different procedural context. *Commil* concerned whether 'the district court erred in preventing Cisco from presenting evidence during the second trial of its good-faith belief of invalidity to rebut *Commil*'s allegations of induced infringement.' . . . There is no basis to expand *Commil* into a pleading requirement." (internal citation omitted)); *and also BRK Brands, Inc. v. Nest Labs, Inc.*, No. 13-c-7900, 2014 WL 1225324, at *2 (N.D. Ill. March 18, 2014) ("[I]f the patent is valid and therefore infringed, it seems odd that the erroneous belief of the inducer that it was invalid should be a defense. . . . the Supreme Court has held that what is required for induced infringement is knowledge of the patent and that it was infringed, not knowledge or belief that it was a valid patent. [] In any event, the issue is insufficiently developed to allow me to dismiss the claim at this juncture." (internal citations omitted)).

17

At the pleading stage, the Court must accept all of Plaintiffs' plausible allegations as true and draw all reasonable inferences from such allegations in Plaintiffs' favor. *See Iqbal*, 556 U.S. at 696; *Bill of Lading*, 681 F.3d at 1340. Plaintiffs' allegations more than suffice to state a claim under Rule 8 for inducement of infringement. The Court, accordingly, should deny Defendant's Motion.

### 2.   Defendant Mischaracterizes The Pre-Filing Correspondence

Defendant has manufactured its own theory of infringement to try to support its factually dependent defense. While Plaintiffs will of course disclose the details of their infringement contentions pursuant to the timing set forth in the Local Rules as well as any applicable scheduling order, the pleading stage is well in advance of any such required disclosures. (*See* LPR 4.4, NDGa.). Defendant relies upon their manufactured theory of infringement to set up a factually and legally defective argument that the '534 Patent is invalid as inherently anticipated by a PCT publication. ECF 37-1 at 15.

"The issue of inherency is a question of fact." *See In re Grasselli,* 713 F.2d 731, 739 (Fed.Cir.1983). "To establish inherency, the extrinsic evidence 'must make clear that the missing descriptive matter is necessarily present in the thing described in the reference, and that it would be so recognized by persons of

ordinary skill. Inherency, however, may not be established by probabilities or possibilities. The mere fact that a certain thing may result from a given set of circumstances is not sufficient.'" *In re Robertson,* 169 F.3d 743, 745 (Fed. Cir. 1999) (citations omitted). "Evidence of invalidity must be clear as well as convincing. Typically, testimony concerning anticipation must be testimony from one skilled in the art and must identify each claim element, state the witnesses' interpretation of the claim element, and explain in detail how each claim element is disclosed in the prior art." *Schumer v. Lab. Computer Sys., Inc.,* 308 F.3d 1304, 1315 (Fed. Cir. 2002).

Defendant does provide any admissible support for their inherent anticipation argument. For example: there is no claim construction advanced, even though Defendant tries to argue that a referenced publication inherently anticipates the '534 claims; and, there is no expert testimony offered to connect the PCT publication to the disputed claims, to support how the PCT publication anticipates the claims, or to address necessary issues concerning the knowledge of one of ordinary skill in the art. Moreover, there are no facts offered regarding KADCYLA®, either concerning its composition or its methodology of treatment, or how KADCYLA® is disclosed in the PCT publication. Defendant's arguments,

if supportable, might be advanced in a summary judgment motion.  However, these factually dependent arguments have no place in a motion to dismiss.

Again, Plaintiffs offer the below discussion of the facts merely to correct some of the Defendant's factual misrepresentations. However, these facts go well beyond whether the allegations in the Complaint are sufficient for pleading purposes.

As stated in the Complaint, in an attempt to partner with Defendant, Dr. Carlton D. Donald, the President and CEO of PHIGENIX, contacted Defendant by letter on June 10, 2013, offering to assist Defendant by providing patent protection that KADCYLA® was lacking. Complaint ¶ 6. In pre-filing correspondence, Dr. Donald indicated that PHIGENIX was willing to consider all options for partnering, including making listed PHIGENIX patents and applications available. (See June 10, 2013 letter from Dr. Donald to Defendant's Dr. Jennifer Cygan (ECF 37-4)). In response to this letter, Defendant requested additional information about the PHIGENIX patent portfolio and PHIGENIX patented technology, which Dr. Donald provided by letter on June 17, 2013. (See June 17, 2013 letter from Dr. Donald to Defendant's Jeffrey Butler (ECF 37-5)). The June 17, 2013 PHIGENIX letter states that PHIGENIX patented technology "covers ***certain*** ***specific*** uses of Trastuzumab, anti-STAT3 agents (e.g. Maytansinoids), and antibody conjugates

consisting of the same" (emphasis added) (ECF 37-5).  The diagram in the same June 17, 2013 letter similarly pertains to "***certain specific*** uses". One of the "***certain specific*** uses" involving the administration of KADCYLA® infringes the '534 Patent, as stated in the detailed paragraphs in the Complaint at Para.12 and 13.

The language in the PHIGENIX June 17, 2013 letter is clear and unambiguous. Moreover, the invention of the '534 Patent, as stated in the claims, including all of the elements and limitations, describes a specific method for treating a breast condition and/cancer. However, Defendant attempts to redraft and eliminate claim language to suit their argument, and not only improperly use the language in the pre-filing correspondence to constitute Plaintiffs' infringement contentions (*See* LPR 4, NDGa), but also to mischaracterize the language in the June 17, 2013 letter to mean that the PHIGENIX patented technology "covers ~~certain specific uses~~ *[each and every use ]* of *[any of the following:]* Trastuzumab, anti-STAT3 agents (e.g. Maytansinoids), and antibody conjugates consisting of the same".  The misstatement by Defendant is necessary to even get to the first step of Defendant's  contrived argument to support inherent anticipation. ECF 37-1 at 16 n. 7.

Defendant's argument next rests on making unsupported factual assertions regarding the disclosure allegedly found in "Genentech's '244 application", and the supposed inherent anticipation resulting from that disclosure. D.I. 37-1 at 16. Defendant is, of course, welcome to bring forward whatever defenses based on references in the art it wishes. However, determining inherent anticipation resulting from a reference is necessarily a fact-based inquiry. As such, it is not properly the basis for an argument on a motion to dismiss. Indeed, that Defendant rests its argument on what is necessarily a factual dispute is grounds for denial of its motion, and moreover Defendant does not even support its argument with any admissible evidence.

Likewise, Defendant makes bald assertions regarding the scope of the claims in relation to the disclosure of "Genentech's '244 application."  ECF 37-1 at 21. The scope of the claims is also necessarily a matter for claim construction.  Claim construction is inappropriate at the pleading phase. *See Sikes Cookers & Grill, Inc.*, 2009 WL 427227, at *3 (denying a motion to dismiss or in the alternative motion for summary judgment at the pleadings phase because "[t]he court finds that it cannot construe these limitations at this time without the information L.P.R. 6 is designed to provide including the exchange of preliminary constructions, a joint claim construction statement, claim construction discovery, claim construction

briefs, and a claim construction hearing."). Accordingly, Defendant's necessary reliance on claim construction is also grounds for denial of its motion.

In summary, Defendant: 1) creates a straw man argument for invalidity (inherent anticipation); 2) relies upon a contrived inapplicable infringement argument (PHIGENIX is allegedly accusing **_[each and every use]_** of **_[any of the following:]_** "Trastuzumab, anti-STAT3 agents (e.g. Maytansinoids), and antibody conjugates"); and 3) then attempts to state a defense based upon "a good faith belief" that it is not infringing the '534 Patent, because the patent is allegedly invalid.   Leaving aside the factual disputes apparent in such a complicated construct, a motion to dismiss cannot be based upon assumptions. Accordingly, the motion should be denied.

## IV.   CONCLUSION

For all of the reasons set forth above, and in the supporting papers filed concurrently with this Response, Plaintiffs respectfully request that the Court deny Defendant's Motion to Dismiss.[3]

Dated:  August 4, 2014

By:  */s/* David C. Hanson
Paul E. Weathington
Georgia Bar No. 743120
David C. Hanson
Georgia Bar No. 940508
**WEATHINGTON SMITH, P.C.**
191 Peachtree St. NE, Suite 3900
Atlanta, GA 30303
Tel: 404.524.1600
Fax: 404.524.1610
PWeathington@weathingtonsmith.com
DHanson@weathingtonsmith.com

Attorneys for Plaintiffs  PHIGENIX, Inc. and MUSC Foundation for Research Development

And

Robert A. Gutkin (Pro Hac Vice)
Michael X. Ye, Ph.D. (Pro Hac Vice)
Aldo Noto(Pro Hac Vice)
John Murray, Ph.D. (Pro Hac Vice)
**ANDREWS KURTH LLP**
1350 I Street, NW

---

[3] If the Court should decide to grant Defendant's Motion, Plaintiffs should be allowed to amend the complaint. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *and see* Fed. R. Civ. P. 15(a)(2) leave to amend is to be "freely given."

Suite 1100
Washington, DC 20005
Tel: 202.662.2700
Fax: 202.662.2739
robertgutkin@andrewskurth.com
michaelye@andrewskurth.com
aldonoto@andrewskurth.com
johnmurray@andrewskurth.com

Gregory L. Porter (Pro Hac Vice)
**ANDREWS KURTH LLP**
600 Travis
Suite 4200
Houston, TX 77002
Tel: 713.220.4200
Fax: 713.220.4285
gregporter@andrewskurth.com

Attorneys for Plaintiff  PHIGENIX, Inc.

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing and the attached documents comply with LR 7.1(D), NDGa and LR 5.1, NDGa. The font and point size used in preparing the foregoing document is Times New Roman, 14 pt.

**WEATHINGTON SMITH, P.C.**

By: */s/* David C. Hanson
David C. Hanson

Attorneys for Plaintiffs  PHIGENIX, Inc. and MUSC Foundation for Research Development

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of August 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of this filing to all attorneys of record who are filing users of the Court's Electronic Filing System.

/s/ David C. Hanson